**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 7 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CAROLYN BLACK, individually and
as administrator of the estate of John
Braden Black,

      Plaintiff-Appellee/
      Cross-Appellant,

v.

M & W GEAR COMPANY; ALAMO
GROUP, INC.,

      Defendants-Appellants/
      Cross-Appellees.

Nos. 00-6072 and 00-6073

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-98-1666-C)

John Gehlhausen, John Gehlhausen, P.C., Lamar, Colorado, for Plaintiff-
Appellee/Cross-Appellant.

Michael S. McMillin, (Dale Reneau, with him on the briefs), Fenton, Fenton,
Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendants-
Appellants/Cross-Appellees.

Before **BRISCOE, MURPHY,** Circuit Judges, and **CROW**, District Judge[*]

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Plaintiff brought a products liability suit against Defendants in the United States District Court for the Western District of Oklahoma for the death of her husband.  Jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332.  After a jury trial, Plaintiff was awarded $2.5 million in actual damages.

Both Plaintiff and Defendants have appealed various rulings made by the district court.   Jurisdiction to consider the appeals arises under 28 U.S.C. § 1291. With two exceptions, the various rulings of the district court are affirmed. Because the district court erroneously granted Plaintiff judgment as a matter of law on whether the alleged defect in the product caused the harm to Plaintiff's husband, and because the district court erroneously granted Defendants judgment as a matter of law on Plaintiff's claim for punitive damages, this court **reverses** in part and **remands** to the district court for further proceedings consistent with this opinion.

## II.    FACTS AND PROCEDURAL HISTORY

---

[*]The Honorable Sam A. Crow, Senior District Judge for the United States District Court for the District of Kansas, sitting by designation.

On September 1, 1998, John Black ("Black") was crushed to death while operating his 18-hp Grazer Model 1890 riding tractor lawnmower ("mower") when the mower toppled into a dry creek bed. Black's wife, plaintiff Carolyn Black, sued the manufacturer of the mower, defendant M & W Gear Company.[1] Plaintiff alleged a products liability claim against Defendants, asserting that the mower was defective and unreasonably dangerous because it lacked a rollover protective structure ("ROPS") and adequate warnings of the need for a ROPS. Plaintiff also sought punitive damages.

The jury returned a general verdict form for Plaintiff and awarded her $2.5 million in actual damages. Both Plaintiff and Defendants have appealed rulings made by the district court.

## III.  DISCUSSION

### A. Evidence Regarding Other Tractor Rollover Accidents

Defendants filed a motion *in limine* to exclude evidence "concerning dissimilar accidents." Defendants claimed that proffered testimony concerning other rollover injuries or fatalities should be excluded pursuant to Rules 401, 402, 403, and 802 of the Federal Rules of Evidence because the other accidents were not substantially similar to Black's accident involving Defendants' mower.

---

[1]M & W Gear Company has since been bought by Alamo Group, Inc. This opinion will refer to both entities collectively as "Defendants."

In ruling on the motion *in limine*, the trial judge focused on the deposition testimony of John B. Sevart, a licensed professional engineer in private practice. In his deposition testimony, Sevart relied on an article by James F. Arndt entitled "Rollover Protective Structures for Farm and Construction Tractors, a 50-year Review" to support his opinion that Defendants' mower was defective and unreasonably dangerous. Sevart explained that the Arndt article reported that fifty thousand people had been killed in tractor rollovers in the fifty years before 1971.[2] Sevart also testified concerning his personal investigations of rollovers of "small tractors" used primarily for "mowing lawns" in which an individual was killed or seriously injured, the partial results of which he had published in an article he co-authored with Larry Schmitt entitled "The Design of ROPS for Small Tractors in the Ten to Twenty Horsepower Range." The district court denied the motion *in limine*, concluding that the testimony was admissible to show notice to Defendants of a design defect.

The trial record is replete with numerous references in the testimony not only to the Arndt and Sevart/Schmitt articles but also to other studies of tractor rollovers. The actual studies, however, were never admitted into evidence. Despite the numerous references to other accidents made during the course of the

---

[2]Based on other references to the Arndt article found in the record, it appears that Sevart misquoted the Arndt article and that the number reported in the article is actually thirty thousand.

4

trial, Defendants failed to raise an objection, beyond their initial motion *in limine*, based on a lack of substantial similarity.

Defendants now claim on appeal that "[t]he trial court erred by admitting numerous references to other rollover accidents and statistical evidence involving dissimilar agricultural tractors, which had an unfair prejudicial effect on the jury's consideration of whether the subject 18 hp mower was dangerous." This court generally reviews district court decisions concerning the admission of evidence for abuse of discretion. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000). An abuse of discretion occurs when the district court's decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999).

"The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant." *Id.* This court has stated that evidence of other accidents in a products liability suit is relevant to show notice, demonstrate the existence of a defect, or to refute the testimony of a defense witness. *See Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992). Before evidence of other accidents is admissible for any purpose, however, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court. *See Wheeler v. John Deere Co.*, 862

5

F.2d 1404, 1407 (10th Cir. 1988).

   1. Sevart's Testimony.

   *(a) Arndt Study* —In considering Defendants' claim of error, we first focus on the testimony of Sevart referencing the Arndt study. The district court treated Defendants' motion *in limine* as a specific objection to the testimony of Sevart. As stated above, Sevart relied on the statistics in the Arndt article concerning the number of people killed in tractor rollovers in the fifty years before 1971 to support his conclusion that the mower manufactured by Defendants was defective and unreasonably dangerous. It does not appear from the record that Plaintiff made any attempt to establish the substantial similarity of the tractor rollovers reported in the Arndt article to the accident that caused the death of Black. This court will assume, therefore, that such a showing was not made during the proceedings relating to Defendants' motion *in limine* . .

   That Plaintiff failed to show substantial similarity, however, does not automatically mean that there was an abuse of discretion in allowing Sevart's deposition testimony.

   > Our review . . . is not contingent on the theory of admissibility adopted by the district court: evidence does not become inadmissible simply because the district court relied on an erroneous reason for admitting it. So long as the evidence is admissible under some legally correct theory, no error occurred.

*Ingersoll-Rand Co.* , 214 F.3d at 1247-48 (quotation omitted).

Rule 702 of the Federal Rules of Evidence permits a "witness qualified as an expert" to give an opinion about "scientific, technical, or other specialized knowledge" which will assist the trier of fact in determining a "fact in issue." Fed. R. Evid. 702. Rule 703 pertains to the "facts or data" upon which an expert may base his opinion, and at the time of trial provided as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. [3]

---

[3]All textual references to Rules 702 and 703 are to those versions preceding December 1, 2000, the effective date of the most recent amendments. *See* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments; Fed. R. Evid. 703, Advisory Committee Notes, 2000 Amendments. The jury verdict in favor of Plaintiff was returned on January 21, 2000. There is a presumption against retroactive application of a statute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). A new statute is said to have a "retroactive effect" if applying it in a case would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* The presumption against retroactive application of a statute applies "absent clear congressional intent favoring" retroactive application of the new statute. *Id.* The presumption articulated in *Landgraf* applies to amended statutes as well as new statutes. *See Million v. Frank*, 47 F.3d 385, 389-90 (1995). The presumption also applies to amendments to the Federal Rules of Evidence. *Cf. Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 587 (1993) ("We interpret the legislatively enacted Federal Rules of Evidence as we would any statute.").

This court will not apply the amended rules in this appeal. First, it should be noted that the amended Rule 703 appears to conflict with prior circuit precedent. *Compare Kinser v. Gehl Co.*, 184 F.3d 1259, 1274-75 (10th Cir. 1999) (allowing expert to testify concerning documents, which could not be

(continued...)

7

In his testimony, Sevart relied on the Arndt study to conclude that Defendants' mower was defective and unreasonably dangerous because it did not have a ROPS. The testimony of Sevart, a licensed professional engineer, was testimony by a "witness qualified as an expert." Fed. R. Evid. 702. [4] Thus, Sevart was entitled to rely on "facts or data . . . of a type reasonably relied upon by experts in the particular field" in forming his opinion that Defendants' mower

_____

[3](...continued)
admitted into evidence because they were not authenticated, to demonstrate the basis for his expert opinion and explaining that "experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance" (quotation and citation omitted)), *overruled on other grounds*, *Weisgram v. Marley Co.*, 528 U.S. 440, 446 n.2, 456-57 (2000), *with* Fed. R. Evid. 703 (as amended) ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). When an amendment such as the amendment to Rule 703 overrules prior circuit precedent, this court generally does not apply the amendment retroactively. *See United States v. Kissick*, 69 F.3d 1048, 1053 (1995).

In addition, there is no evidence in the Advisory Committee Notes indicating that the 2000 amendments should be applied retroactively. Finally, in this case, not only did the events underlying this litigation occur before the amendments took effect, but the actual trial was completed and the verdict returned before the amendments took effect. In this respect, the amendments can be said to "impair rights a party possessed when he acted." *Landgraf*, 511 U.S. at 280.

[4]Defendants objected to the opinions provided by Sevart because Plaintiff had not provided Defendants with the disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. The district court ruled that Plaintiff was not required to produce these disclosures with respect to Sevart: "Rule 26 requires these written reports if an expert has been retained or works for the party and is expected to give expert testimony. Neither is the case with Mr. Sevart . . . ." Defendants have not appealed this ruling, and we do not address it on appeal.

was defective and unreasonably dangerous.  Fed. R. Evid. 703.  As Defendants have not argued otherwise, this court will assume that the Arndt article is "of a type reasonably relied upon by experts in the particular field."  Fed. R. Evid. 703.

Sevart was therefore entitled to rely on the Arndt article in forming his opinion about whether Defendants' mower was defective and unreasonably dangerous.  It does not necessarily follow, however, that Sevart was also entitled to testify concerning the content of the Arndt article, as this evidence was otherwise inadmissable because of Plaintiff's failure to establish the substantial similarity of the other tractor rollover accidents.  The language of Rule 703 does not indicate whether an expert can testify about the content of studies reasonably relied on in forming the basis of his expert opinion but otherwise inadmissable under the Federal Rules of Evidence.  *See Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990) ("While Rule 703 entitles experts to base their opinion on [evidence otherwise inadmissible], the rule does not address the admissibility of the underlying information.").

In *Kinser v. Gehl Co*, this court held that the district court did not abuse its discretion in allowing an expert to reference various documents used to support the expert's opinion, despite the inadmissibility of the unauthenticated documents.  *See* 184 F.3d 1259, 1274-75 (10th Cir. 1999)   (framing the issue as whether the district court erred in allowing plaintiff's expert to testify about and

9

reference various documents relied on by the expert in forming his expert opinion, and concluding that the district court did not abuse its discretion in allowing this testimony), *overruled on other grounds*, *Weisgram v. Marley Co.*, 528 U.S. 440, 446 n.2, 456-57 (2000). In so holding, this court seemed to adopt the analysis articulated in a leading treatise that experts should be allowed to base their opinion on inadmissible evidence, and also to testify concerning the content of the inadmissible evidence, if the evidence is inadmissible only because of relevance or reliability concerns. *See id.* at 1275; *see also* 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6273, at 311-21 (1997). This court justified its holding in *Kinser* by stating that "[t]he rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." *Kinser*, 184 F.3d at 1275 (quotation omitted).

Under circuit precedent, therefore, experts are allowed to base their opinions on otherwise inadmissible evidence if the basis upon which the evidence would otherwise be considered inadmissible is reliability or relevance concerns. Accordingly, Sevart's testimony about the content of the Arndt article was properly admitted if the substantial similarity test is driven by reliability or relevance concerns. It is clear that the substantial similarity requirement derives from relevance concerns. *See* 63A Am. Jur. 2d *Products Liability* § 1067 (1997).

10

The trial court thus did not abuse its discretion in allowing Sevart to testify about the Arndt study.

*(b) Sevart's personal investigation of other accidents* —Sevart also testified concerning his own investigation of other tractor rollovers, the partial results of which were published in an article entitled "The Design of ROPS for Small Tractors in the Ten to Twenty Horsepower Range." As stated previously, the district court treated Defendants' motion *in limine* as a specific objection to the testimony of Sevart, but allowed Sevart to testify about his private investigation of tractor rollovers.

The district court did not abuse its discretion in allowing Sevart's testimony. Sevart testified that he had investigated at least twenty-five rollover accidents involving "[s]mall tractors . . . [u]sed primarily for mowing," explaining the various ways in which these tractors had rolled over. The district court's conclusion that this testimony satisfied the substantial similarity test was not "arbitrary, capricious, whimsical, or manifestly unreasonable." *Coletti*, 165 F.3d at 777.

2. Other References to Tractor Rollovers

Besides the testimony of Sevart, there were many other references to tractor rollover accidents throughout the course of the trial. At trial, however, Defendants did not object to the references of other tractor rollover accidents

11

based on a lack of substantial similarity. The only time Defendants raised that particular objection was in their pre-trial motion *in limine*, which the district court treated as a specific objection to the videotape deposition of Sevart. As a consequence, this court must first decide if Defendants' motion *in limine* preserved the issue for appeal.

"[M]ost objections [made pursuant to a motion *in limine*] will prove to be dependent on trial context and will be determined to be waived if not renewed at trial." *United States v. Mejia-Alarcon*, 995 F.2d 982, 988 (10th Cir. 1993). This court has cautioned that "[p]rudent counsel will renew objections at trial." *Id.* Nevertheless, a pretrial motion *in limine* may preserve an objection if the following three factors are met: (1) the issue was fairly presented to the district court; (2) the issue is the type that can be finally decided in a pretrial hearing; and (3) the issue was unequivocally decided by the trial judge. *See id.* at 986.

Defendants' motion *in limine* and supporting brief were remarkably cursory, non-specific, and conclusory, containing just over one page dedicated generally to the substantial similarity standard. This district court filing did not specify the evidence it sought to be excluded, nor did it explain how the circumstances surrounding the other accidents differed from those surrounding Black's accident. Turning as it does on the substantially similar test, this motion *in limine* challenging all evidence of other accidents would have difficulty

12

qualifying under the *Mejia-Alarcon* test as one fairly presenting the issue and of the type which could be finally resolved before trial in the absence of challenges to specific evidence. Such a motion does not enable the proponent of the evidence to lay a foundation for substantially similar circumstances. Moreover, this non-specific pretrial motion *in limine* did not account for trial context, the character of the evidence, or the theory upon which the plaintiff offered the evidence. *See Mejia-Alarcon*, 995 F.2d at 987 (stating that "fact-bound determinations dependent upon the character of the evidence introduced at trial" are not issues that can be finally decided at a pretrial hearing); *Wheeler*, 862 F.2d at 1407, 1407-08 (stating that "[w]hether accidents are substantially similar depends largely upon the theory of the case" and that the purpose for which the evidence is offered at trial affects the degree of similarity required).

Finally, even assuming the issue was fairly presented and could have been finally decided prior to trial, the district court treated Defendants' motion *in limine* merely as a specific objection to the videotape deposition of Sevart. At the January 12th hearing on the pending motions *in limine*, the district judge stated as follows: "The other portion of this motion regards dissimilar accidents or statistics. In this case, I have the benefit of [Sevart's] testimony since he is going to appear by deposition and he can't change what he's already said. I agree that this testimony is permissible to show notice." Although the district

13

court later stated that Defendants' "motion is denied in its entirety," this court cannot say that Defendants' attempt to have *all* evidence of other accidents excluded was "ruled upon without equivocation by the trial judge," the third factor in the *Mejia-Alarcon* test. *See* 995 F.2d at 986. Rather, the trial court treated Defendants' motion as a specific objection to Sevart's testimony. *See supra* subsection III(A)(1) (affirming the district court's decision allowing Sevart's testimony concerning other accidents).

This court thus concludes that Defendants' motion *in limine* did not preserve their objection to the various references at trial, aside from the testimony of Sevart, to other tractor rollover accidents. This court has noted in a slightly different context that

> a trial court does not have the luxury of examining the entire record in an effort to determine whether it can stitch together from various objections made at different points in the trial a particular ground for an objection to the admission of evidence: even if it could do so, such an approach would deprive opposing counsel of the opportunity to take corrective action and would only contribute to chaos in the trial process.

*Fenstermacher v. Telelect, Inc.*, No. 92-3283, 1994 WL 118046, at *3 (10th Cir. Mar. 28, 1994) (unpublished disposition). It was Defendants' responsibility to object as specific pieces of evidence were offered, not the trial court's duty to *sua sponte* monitor the Plaintiff's evidence. Pretrial motions *in limine* can be helpful to the trial court and appropriate trial strategy. They are not, however,

14

substitutes for trial objections to specific proffered evidence.

As Defendants did not properly object to the testimony concerning other tractor rollovers, this court reviews the admission of the evidence only for "plain error resulting in manifest injustice." *United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir. 1986). Because Defendants illustrated through cross examination the differences between the testimony concerning the other accidents and Black's accident, there was not a "plain error resulting in manifest injustice." *See Macsenti v. Becker*, 237 F.3d 1223, 1231 (10th Cir. 2001) (finding no plain error in admission of expert testimony and noting that Appellant cross-examined the expert).

**B. "Read and Heed" Presumption**

In order to prevail on her products liability claim, Plaintiff had to establish the following three factors under Oklahoma law: (1) a defect existed in the product at the time it left the manufacturer, retailer, or supplier's control; (2) the defect made the product unreasonably dangerous; and (3) the defect in the product was the cause of the injury. *See Alexander v. Smith & Nephew, P.L.C.*, 90 F. Supp. 2d. 1225, 1232 (N.D. Okla. 2000). One of the theories asserted by Plaintiff was that Defendants' mower was defective and unreasonably dangerous because of the lack of adequate warnings about the need for a ROPS. In order to prevail on this claim, Plaintiff had to show that the lack of adequate warnings

15

about a ROPS caused the injuries to Black. *See Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1332 (10th Cir. 1996). Thus, under Plaintiff's "lack of warning" theory, Plaintiff first had to establish that any warning about the need for a ROPS on Defendants' mower would have prompted Black to purchase a ROPS. [5] Under Oklahoma law, there is a rebuttable presumption that Plaintiff would have read and heeded an adequate warning. *See id*. This presumption, however, disappears once the defendant comes forward with some evidence indicating that the plaintiff would not have followed the warning. *See id.*

The immediate target of Defendants' appellate challenge is Jury Instruction No. 8, which stated:

> The law presumes that if an adequate warning regarding the need for a ROPS safety frame had been given to John Black it would have been followed. You must follow this presumption unless and until evidence is presented that satisfies you by a preponderance of the evidence that such a warning would not have been followed by Mr. Black.

Defendants claim (1) that no presumption instruction should have been given because they presented evidence rebutting the presumption and (2) that the effect of the trial court's instruction was to shift to Defendants the burden of proving that Black would not have followed the proposed warning and purchased a

---

[5]Plaintiff, of course, also had to prove that a ROPS on Defendants' mower would have prevented the injuries to Black. This causation requirement is discussed *infra* section III(E).

16

ROPS.

Defendants, however, did not object to Instruction No. 8. This court's review of the jury instruction is thus limited. "In a civil case each party must live with the legal theory reflected in instructions to which it does not object. Therefore, this court will not review instructions given to which no objections were lodged before the jury retired for deliberation unless they are patently plainly erroneous and prejudicial." *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1054 (10th Cir. 1988) (quotations and citations omitted).

This court agrees that Instruction No. 8 erroneously shifted the burden of proof from Plaintiff to Defendants on whether Black would have followed the proposed warning and purchased a ROPS. Defendants did present evidence that Black would not have purchased a ROPS even if a warning to that effect was included. Because of this evidence, under Oklahoma law the presumption disappeared and Instruction No. 8 should not have been given. *See Ben E. Keith Co.*, 97 F.3d at 1332-33.

Instruction No. 8, however, did not result in such a "miscarriage of justice" that the jury's decision must be vacated. *Aspen Highlands Sking Corp. v. Aspen Sking Co.*, 738 F.2d 1509, 1516 (10th Cir. 1984) (quotation omitted). Jury Instruction No. 2 properly informed the jury that "[t]he burden is upon the plaintiff in a civil action such as this to prove every essential element of the

17

claim by a preponderance of the evidence. If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, the jury should find for the defendants." It is possible that the jury resolved the discrepancy between Instruction No. 2 and Instruction No. 8 in favor of Defendants and thus correctly placed the burden of demonstrating that Black would have followed the warning on Plaintiff.

Even if the jury did follow Instruction No. 8 and shifted the burden to Defendants to prove Black would not have followed the warning, this court cannot state on appeal that this error was "patently . . . prejudicial" so as to require a reversal of the jury verdict. *Zimmerman*, 848 F.2d at 1054 (quotation omitted). Both sides presented evidence addressing whether Black would have bought a ROPS if there had been a warning that a ROPS was necessary. The jury was thus required to weigh conflicting evidence in determining whether a party had met its burden of proof. In doing so, it presumably followed that portion of Instruction No. 2 defining a preponderance of evidence as that amount and quality of evidence rendering a matter "more likely so than not so." *See Weber v. Cont'l Cas. Co*, 379 F.2d 729, 731 (10th Cir. 1967). As a consequence, Defendants were prejudiced by Instruction No. 8's erroneous allocation of the burden of proof only if the jury considered the evidence of Black's likelihood to heed a warning presented by both sides equipoised. While it is conceivable that

18

the jury viewed the evidence as being in complete equilibrium, this mere possibility does not rise to the level of demonstrating that Instruction No. 8 was "patently . . . prejudicial" to Defendants. *Zimmerman*, 848 F.2d at 1054 (quotation omitted). In light of this court's limited standard of review, Instruction No. 8 did not constitute reversible error.

**C. Jury Instruction Concerning Evidence of Alcohol Consumption**

Jury Instruction No. 6 stated as follows:

> I have previously allowed you to hear evidence relating to alcohol use. However, it is now clear that alcohol consumption is irrelevant and plays no part in the issue for you to resolve. The issue that you must resolve is whether the lawn tractor was unreasonably dangerous when it left the manufacturer's control. Alcohol use is completely irrelevant to this determination. Therefore, you are instructed to eliminate from any phase of your deliberations any reference to alcohol.

Defendants makes two arguments concerning Instruction No. 6. Defendants first claim that, even assuming it was proper to grant Plaintiff a directed verdict on causation, [6] Instruction No. 6 was error because it instructed the jury that the only issue it needed to resolve was "whether the lawn tractor was unreasonably dangerous when it left the manufacturer's control." Thus, Defendants reason, the jury did not have to find that a defect existed in Defendants' mower at the time it left the manufacturer, retailer, or supplier's control. *See Alexander*, 90 F. Supp.

---

[6]The directed verdict for Plaintiff on causation is discussed *infra* section III(E).

2d. at 1232.

This court reviews Jury Instruction No. 6 under the following standard of review:

> To determine whether the jury was adequately instructed on the applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way. The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.

*Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir. 1999) (citation omitted). Reviewing the instructions in their entirety, this court cannot say the jury was misled. Jury Instruction No. 7 properly stated that Plaintiff had the burden of proving "the lawn tractor was defective at the time it was manufactured or sold by the defendants or left [the] defendant's control." In addition, the Oklahoma Court of Appeals has noted products liability cases from other jurisdictions in which a product was deemed "defective" because it was "unreasonably dangerous" and in which the terms "defective condition" and "unreasonably dangerous" were considered "essentially synonymous." *Spencer v. Nelson Sales Co.*, 620 P.2d 477, 481-82 (Okla. Ct. App. 1980). Thus, under the circumstances of this case, it was not reversible error for the district court to instruct the jury that "[t]he issue that you must resolve is whether the lawn tractor was unreasonably dangerous when it left the manufacturer's control."

Defendants also claim that Instruction No. 6 was erroneous because it told

20

the jury to disregard evidence of alcohol consumption.  At trial, Defendants presented testimony that Black had a blood alcohol content of "0.07 percent weight per volume in the femoral blood."

Because of the evidence of Black's blood alcohol content, Defendants requested that the trial judge give a misuse instruction.  In Oklahoma, misuse of a product is an affirmative defense to a products liability claim and occurs when the plaintiff uses the product in a manner which the manufacturer did not intend or reasonably anticipate.  *See Treadway v. Uniroyal Tire Co*., 766 P.2d 938, 941 (Okla. 1988).  The district court refused to give a misuse instruction, however, concluding that Black's alcohol consumption was evidence of contributory negligence and not misuse.  In Oklahoma, use of a product "for a proper purpose but in a careless manner" is merely contributory negligence, which is not a defense to a products liability suit.  *See id.*

Defense counsel objected to the district court's decision, stating:

> It's my position, and the defense's position, that the issue of alcohol and his impairment is material and relevant to the issue of causation and the jury should be instructed on that issue.  But it is admissible but limited to the purpose of causation.  And it could certainly be the sole cause of the accident, the direct cause of the accident, it and the way he was operating the mower at the time of the accident, close to the edge.

The district court rejected defense counsel's argument.  At the close of Plaintiff's case, Defendants abandoned their request for the misuse instruction and thus

21

have not appealed the district court's refusal to give the instruction. Rather, Defendants have argued that Instruction No. 6 was improper because evidence of Black's alcohol consumption at the time of the accident was relevant to (1) impeach Plaintiff's witnesses who testified that Black was a safe individual, to (2) demonstrate that Black would not have been wearing a seatbelt, and to (3) demonstrate that Black's "inattention and conduct of driving . . . the mower off the steep embankment was the sole cause of his injuries and death, as opposed to a defect in the mower."

Plaintiff contends that Defendants did not raise the first two arguments before the trial court. Aside from the objection quoted above, Defendants' only other objection to Instruction No. 6 was as follows: "I object to [Instruction No. 6] being given for the reasons that it's our position that the evidence of alcohol goes to the issue of causation and there is evidence that it's not reasonably foreseeable that someone would use this mower while impaired through alcohol."

Defendants attempt to avoid a waiver of their first two arguments by stating that these arguments are ultimately causation issues. Defendants reason that impeaching Plaintiff's witnesses on Black's safety habits is relevant to the causation issue of whether Black would have purchased a ROPS. Similarly, Defendants maintain that whether Black would have been wearing a seatbelt with his ROPS is relevant to the causation issue of whether a ROPS would have

22

protected Black.

Defendants' cursory trial objection to Instruction No. 6 on causation grounds cannot be read to preserve their first two theories on why Instruction No. 6 was erroneous. There is simply no way the trial judge could have understood Defendants to be advancing these two theories as to why alcohol evidence was relevant. To the contrary, Defendants' first two theories appear to be an appellate attempt to craft a theory for the admissibility of the alcohol evidence. It was Defendants' responsibility to clarify to the district court, however, the exact theory of admissibility on which they thought the alcohol evidence was relevant. *See United States v. Willie*, 941 F.2d 1384, 1394 (10th Cir. 1991); *Comcoa, Inc. v. NEC Tels., Inc.*, 931 F.2d 655, 660 (10th Cir. 1991). Trial judges should not be required "to seek after the purpose of the evidence or to imagine some admissible purpose for it without regard to the actual state of mind, motives, and purposes of the proponent." *Willie*, 941 F.2d at 1394. Because Defendants did not articulate to the district court the first two arguments made on appeal, we review these arguments only for plain error. *See id.* Even assuming that Defendants' first two arguments render the alcohol evidence relevant, the district court's failure to *sua sponte* contrive these theories on behalf of Defendants does not constitute plain error.

Defendants also argue that evidence of alcohol consumption was relevant

23

to show that Black's "inattention and conduct of driving . . . the mower off the steep embankment was the sole cause of his injuries and death, as opposed to a defect in the mower." Defendants preserved this argument by making it to the district court, and this court thus reviews the district court's rejection of the argument for an abuse of discretion. *See Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368 (10th Cir. 1996) (stating that evidentiary decisions and decisions concerning whether to give a particular jury instruction are reviewed for an abuse of discretion).

Defendants' argument is misdirected because it presumes that evidence of Black's consumption of alcohol is relevant to show that Black's negligence was the sole legal cause of his injuries. While evidence of Black's alcohol consumption might be probative of whether Black's negligence was a cause of his injuries, that issue is not material. As previously noted, contributory negligence is not a defense to a products liability suit in Oklahoma. *See Treadway*, 766 P.2d at 941. Thus, it is simply irrelevant whether Black's injuries would not have occurred but for his own negligence. It is only relevant that *Defendants'* defective product was a cause of Black's injuries.

Defendants correctly note that the Oklahoma Supreme Court has held that alcohol consumption can be a defense in a products liability case if the defendant can show that the plaintiff's intoxication caused the injury. *See Kirkland v.*

24

*GMC*, 521 P.2d 1353, 1366 (Okla. 1974); *Fields v. Volkswagen of Am.*, 555 P.2d 48, 57 (Okla. 1976). The manner in which the Oklahoma Supreme Court contemplated the use of alcohol evidence in *Kirkland* and *Fields*, however, is far different from the manner in which Defendants in this case sought to use the evidence.

In both *Kirkland* and *Fields*, plaintiffs brought products liability suits claiming that a defect in their automobiles had caused them to be in accidents and thereby sustain injuries. *See Kirkland*, 521 P.2d at 1356-57; *Fields*, 555 P.2d at 52. In both cases, the Oklahoma Supreme Court stated that the plaintiff could not recover if the plaintiff's intoxication, *rather than* a defect in the car, caused the accident and the resultant injuries. *See Kirkland*, 521 P.2d at 1366; *Fields*, 555 P.2d at 57.

In *Kirkland* and *Fields*, the intoxication of the plaintiff was entirely an alternative theory as to how the accident, and thus the resultant injuries, occurred. The plaintiff in *Kirkland* claimed that her accident and injuries occurred because her seat had collapsed while she was driving. *See Kirkland*, 521 P.2d at 1356. The defendant denied having a defective product, however, and instead asserted that the accident and injuries had been caused by the plaintiff's drunken driving. *See id.* at 1356-57. The Oklahoma Supreme Court noted that the defendant could present evidence of the plaintiff's intoxication to

25

show that the accident and injuries had been caused solely by the plaintiff's drunk driving, *not* a defect in the seat. *See id.* at 1366. Thus, evidence of plaintiff's intoxication was relevant to show that the seat had *not* collapsed before the accident. Although the Oklahoma Supreme Court spoke in terms of causation, the gist of its ruling was that evidence of the plaintiffs' intoxication was probative of whether there was any defect at all.

In this case, Plaintiff does not claim that a defect in Defendants' mower caused the accident; rather, Plaintiff claims Defendants' mower was defective because it was not crashworthy in the event of an accident, and that this defect caused Black's death. Thus, it is irrelevant that Black's consumption of alcohol might have caused the accident because that evidence does not rebut Plaintiff's evidence that Defendants' defective product caused Black's injuries. Defendants might be correct to argue in a vacuum that "but for" Black's alcohol consumption, the accident and thus the injuries to Black would not have occurred. The evidence of alcohol consumption, however, does not address the pertinent issue of whether a defect in *Defendants' product* was a cause of the injuries.

In a products liability case in which contributory negligence is not a defense and misuse is not an issue, the only relevant causation issue is whether a defect in the defendant's product was a cause of the injury. In both *Kirkland* and

26

*Fields* the evidence of the plaintiffs' intoxication rebutted the plaintiffs' theories that a defect in the defendants' product had caused the injuries; the evidence of Black's consumption of alcohol, on the other hand, does not address Plaintiff's theory that Black's injuries would not have occurred if a ROPS had been present on Defendants' product. Because evidence of Black's use of alcohol would not rebut the material question of whether a defect in Defendants' product was a cause of Black's injuries, but would merely establish that Black's carelessness was also a cause of the injuries, the evidence was relevant only if contributory negligence was a defense. It was thus properly excluded by the district court's Instruction No. 6.

### D. Exclusion of Testimony from Defendants' Expert that a ROPS Would Not Have Protected Black

Defendants challenge the district court ruling which excluded their expert, Bobby Clary, from testifying that a ROPS would not have protected Black from death or serious injury. Dr. Clary has a degree in agricultural engineering and a Ph.D. in engineering. In his expert report prepared pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Dr. Clary gave the following opinion:

> While the results of the same accident with a similar mower equipped with a ROPS frame may have resulted in a somewhat different accident, there is no reason to believe that the ultimate outcome of the accident would have been different. Considering the elevated blood alcohol level, the nature of the accident cite, and the interference of the mower with the steel culvert underneath the roadway the greatest likelihood is that Mr. Black would have been

thrown from the operator's station into the path of the on-coming mower. The considerable time that elapsed between the accident and when efforts were made to find Mr. Black also weigh against ROPS changing the outcome of the accident. . . . It is only speculation that Mr. Black would not have been killed if a ROPS had been present on the mower.

In granting Plaintiff's motion *in limine* to prevent Dr. Clary from testifying as to whether a ROPS would have prevented Black's injuries, the district court reasoned:

> I agree that there is not sufficient foundational bases for these opinions, and I glean that from Clary's written report and from the deposition wherein he says what he hasn't done in support of these conclusions. He was not aware that it was a four-post rather than a two-post ROPS. He had made no tests or calculations to support his conclusions regarding what amount of energy it would absorb or could withstand and what would have happened. He simply renders an opinion without any basis whatsoever.
>
> In support of this opinion, he also concludes that the time that elapsed between the accident and when Mr. Black was found bear on the causation and results and there is no qualification apparent from his credentials that would permit him to make that conclusion. There's also no explanation of how that affects this conclusion.

In reviewing the district court's exclusion of Dr. Clary's opinion, this court follows the general framework established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). Once this court concludes that the district court correctly applied the *Daubert* analysis, we review the exclusion of Dr. Clary's testimony for an abuse of discretion. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997).

In *Daubert*, the Supreme Court described a trial judge's "gatekeeping role"

28

in determining whether expert scientific testimony meets the requirements for admissibility under Rule 702 of the Federal Rules of Evidence. *See Daubert*, 509 U.S. at 592-95. The Court stated that a trial judge must focus on the reasoning and methodology of the expert in arriving at the conclusion. *See id*. Thus, an expert's scientific opinion must rest on a "reliable foundation." *Id.* at 597. While Dr. Clary's proposed testimony might more properly be characterized as "technical [] or other specialized knowledge" as opposed to "scientific . . . knowledge," the *Daubert* analysis still controls. *See Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("Although, as indicated, *Daubert* dealt with scientific experts, its language relative to the 'gatekeeper' function of federal judges is applicable to all expert testimony offered under Rule 702.").

The district court concluded that because Dr. Clary had not conducted any tests regarding his conclusion that a ROPS would not have prevented the harm to Black, and because Dr. Clary was not even aware that Plaintiff's claim was focused on the lack of a four-post, as opposed to a two-post, ROPS, the opinion was "without any basis whatsoever." Because the district court properly applied the *Daubert* analysis and focused on the foundation of Dr. Clary's opinion, this court reviews the district court's conclusion deferentially for an abuse of discretion. *See Call*, 129 F.3d at 1405.

This court cannot say the district court abused its discretion in refusing to

29

admit the testimony of Dr. Clary that a ROPS would not have prevented the injuries to Black. The district court properly noted that Dr. Clary had not conducted any tests or calculations to support his opinion. Defendants' note that Dr. Clary had the requisite background to be able to testify that a ROPS would not have prevented the fatal injuries to Black. The district court did not, however, exclude the testimony because of Dr. Clary's lack of qualifications. Instead, it excluded the evidence because Dr. Clary had not based his conclusion on the results of tests or calculations specific to Black's accident. The decision to exclude Dr. Clary's testimony that a ROPS would not have saved Black's life was thus not an abuse of discretion.

### E. Judgment as a Matter of Law for Plaintiff on Whether a ROPS Would Have Protected Black

The district court granted Plaintiff's motion for judgment as a matter of law on the issue of whether a ROPS would have protected Black. Defendants challenge that ruling under Rule 50 of the Federal Rules of Civil Procedure.

Plaintiff asserted two theories in support of her claim that the mower was defective and unreasonably dangerous: the lack of a ROPS and the lack of adequate warnings about the need for a ROPS. In order to prevail on either of these theories, Plaintiff had to establish that a ROPS would have prevented the death of her husband. *See Alexander*, 90 F. Supp. 2d. at 1232.

In order to support a finding of causation, Plaintiff presented the expert

testimony of Dr. Jeffrey Ketchman, an engineering consultant. Ketchman testified that a ROPS would have prevented the death of Black. Ketchman's opinion that a ROPS would have protected Black was apparently based on two publications of the National Institute for Occupational Safety and Health reporting that less than one percent of tractor rollovers with a ROPS have resulted in fatalities.

In addressing Plaintiff's motion for judgment as a matter of law, the district court stated:

> Well, I don't think there is any evidence that the ROPS would not have protected the plaintiff. That is specifically the evidence I excluded in ruling on the motion in limine regarding your expert [Dr. Clary] who was prepared to testify that the ROPS would have not protected in a fall of that kind. He didn't, wasn't permitted to, and, as a result, there is no evidence to contradict [Plaintiff's] evidence that ROPS would have saved his life, I think. Now, is there—can anybody offer me any evidence that would contradict that conclusion?

Defense counsel responded: "No. Based upon your ruling, that's true, when you excluded the evidence; that's right." The court then granted Plaintiff's motion, concluding that the only issue for the jury to decide was "whether the lawn tractor was unreasonably dangerous when it left the manufacturer's control." The court acknowledged its ruling was exceptional: "I think it's difficult for all of us to think of causation as established . . . ."

This court reviews a district court's decision on a motion for judgment as a

31

matter of law *de novo* , applying the same standard applied by the district court. *See Weese v. Schukman* , 98 F.3d 542, 547 (10th Cir. 1996). "A motion for a judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Id.* (quotation omitted). When the party with the burden of proof has moved for judgment as a matter of law, the motion "may be granted only where [the movant] has established his case by evidence that the jury would not be at liberty to disbelieve." *Hurd v. Am. Hoist & Derrick Co.* , 734 F.2d 495, 499 (10th Cir. 1984).

The trial court erred in directing a verdict for Plaintiff on causation. The only evidence that a ROPS would have saved Black, the testimony of Ketchman, was not of a character that prohibited the jury from discrediting it. *See Hurd* , 734 F.2d at 499. Ketchman's testimony was based only on statistics and not dictated by undisputed facts surrounding Black's accident.

The district court applied the wrong standard by asking whether Defendants had presented any evidence on the causation issue. Instead, the district court should have asked whether Plaintiff had "established [her] case by evidence that the jury would not be at liberty to disbelieve." *Hurd* , 734 F.2d at 499. Because the jury could reasonably have rejected Plaintiff's only evidence that a ROPS would have prevented the injuries to Black, it was error for the

32

district court to grant Plaintiff's motion for judgment as a matter of law.

**F. Judgment as a Matter of Law on Punitive Damages**

The district court granted Defendants' motion for judgment as a matter of law on punitive damages and refused to give a jury instruction on punitive damages, concluding that the evidence offered by Plaintiff did not permit an award of punitive damages under Oklahoma law. As explained above, this court reviews a district court's decision on a motion for judgment as a matter of law *de novo*, applying the same standard applied by the district court. *See Weese*, 98 F.3d at 547. In order to affirm the grant of judgment as a matter of law, this court must be certain that the evidence "conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Id.* (quotation omitted). This court must construe the evidence and inferences most favorably to the non-moving party, the Plaintiff. *See Davis v. United States Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998).

Punitive damage awards in Oklahoma are governed by Section 9.1 of Title 23 of the Oklahoma Statutes. Section 9.1 delineates three circumstances under which punitive damages may be awarded in a products liability case: (1) when the jury finds by clear and convincing evidence that the defendant was guilty of reckless disregard for the rights of others; (2) when the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice

33

towards others; or (3) when the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others, and the court finds that there is evidence beyond a reasonable doubt that the defendant acted intentionally and with malice and engaged in conduct life-threatening to humans. *See* Okla. Stat. Ann. tit. 23, § 9.1. The amount of punitive damages that may be awarded depends on the defendant's mental culpability. *See id.*

Plaintiff does not contend that Defendants acted "intentionally and with malice," but insists that a punitive damages instruction was proper because Defendants acted with "reckless disregard for the rights of others." *Id.* Oklahoma Uniform Jury Instruction No. 5.6 states that

> [t]he conduct of [Defendant] was in reckless disregard of another's rights if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

Okla. Unif. Civil Jury Instruc. 5.6, *available at* http://www.oscn.net/ applications/oscn. There is evidence in the record, discussed *supra* section III(A), that Defendants' decision not to provide a ROPS or warn about its need was "unreasonable under the circumstances . . . [with] a high probability that the conduct would cause serious harm to another person." Okla. Unif. Jury Instruc. No. 5.6. This evidence was also relevant to whether the mower was

34

"unreasonable under the circumstances . . . [with] a high probability that the conduct would cause serious harm to another person." *Id.*

There is also record evidence that Defendants were "aware, or did not care, that there was a substantial and unnecessary risk that [its] conduct would cause serious injury to others." *Id.* In October of 1990, almost a year before Black bought the mower, Sevart wrote a letter to Defendants which stated as follows: "Enclosed please find a copy of an advertisement which I recently ran across. Please be advised that you need a ROPS on your mower. I have enclosed several papers which we have written on the subject of ROPS for small tractor mowers." [7] In addition, the trial court allowed Sevart to testify as to two studies concerning other rollover accidents for the purpose of showing notice to Defendants of the need for a ROPS. [8] Finally, the jury could have construed the testimony of Defendants' former president to indicate that Defendants were aware of a rollover problem on the mower model in question.

Plaintiff had an elevated burden: proof by clear and convincing evidence that Defendants were guilty of reckless conduct. *See* Okla. Stat. Ann. tit. 23, §

---

[7]It is not clear from the record that Sevart's letter referred to the mower model involved in the death of Black. However, because Defendants' do not claim otherwise, and because this court must construe the evidence and inferences most favorably to Plaintiff, we assume the letter referred to the mower in question. *See Davis v. United States Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998).

[8]This decision by the trial court is discussed *supra* subsection III(A)(1).

9.1. Nevertheless, a reasonable juror could have resolved that Plaintiff met this burden with the evidence presented. [9] *See Weese*, 98 F.3d at 547. It was thus error for the district court to grant Defendants' motion for judgment as a matter of law on the issue of punitive damages.

## IV.    CONCLUSION

In this complex litigation, the district court made but two reversible errors: (1) granting judgment as a matter of law for Plaintiff on whether a ROPS would have protected Black, and (2) granting judgment as a matter of law for Defendants on whether Plaintiff was entitled to punitive damages. This court therefore **AFFIRMS** in part, **REVERSES** in part, and **REMANDS** to the district court for further proceedings consistent with this opinion.

---

[9] Although the dissent concludes that reasonable jurors could not conclude that Defendants were guilty of reckless conduct, it appears that this conclusion is driven by the dissent's position that all of the evidence concerning other tractors and other accidents, discussed in the majority opinion *supra* section III(A), should have been excluded.

No. 00-6072, <u>Black v. M&W Gear</u>

**BRISCOE**, Circuit Judge, concurring:

I concur in the result, but write separately to outline why, in my view, the district court acted within its discretion in admitting plaintiff's evidence regarding other tractor rollover accidents.

On January 3, 2000, approximately one week prior to trial, defendants filed a motion in limine asking the district court "to enter an order excluding any testimony, evidence or reference by counsel to the following matters: I. Dissimilar accidents or statistics regarding other roll-over accidents; II. Expert opinion testimony by plaintiff's expert, John B. Sevart, P.E." App. at 111. With regard to the first matter, defendants asked the court "to exclude any testimony or evidence concerning other accidents or statistics concerning roll-over injuries or fatalities since the plaintiff cannot show the requisite 'substantial similarity' foundational elements." <u>Id.</u> at 113 (citing Fed. R. Evid. 401, 402, 403 and 802). With respect to the second matter, defendants asserted they were never provided with "an expert report from Sevart as required by Rule 26(a)(2)." <u>Id.</u> at 113. Accordingly, defendants asked the district court to exclude all of Sevart's testimony in order "to avoid unfair surprise and prejudice." <u>Id.</u> at 114.

The district court addressed defendants' motion in limine, along with various other pretrial motions, on the first day of trial. The district court denied defendants' request to exclude Sevart's testimony in its entirety. <u>Id.</u> at 203 ("The

motion to prohibit his testimony because of the lack of a report will be denied.").

The district court then addressed the portion of defendants' motion "regard[ing]

dissimilar accidents or statistics." Id.  Although the record on this point is not

completely clear, there is some indication that the district court focused solely on

the testimony of Sevart, since he was appearing by videotaped deposition and the

court had reviewed his testimony prior to the hearing.  See id. ("In this case, I

have the benefit of the witness's testimony since he is going to appear by

deposition and he can't change what he's already said.").  The district court ruled

that evidence of other tractor rollover accidents was relevant and admissible for

purposes of demonstrating that defendants had notice of potential defects in the

tractor/mower purchased by the decedent.  In reaching this conclusion, the district

court stated:

> I agree that this testimony is permissible to show notice.  It does not
> go into any detail, and to the extent that it does, the testimony itself
> makes clear that the accidents and incidents are not the same as the
> one in this case but as far as the rollover statistics, I think they are
> relevant and more probative than prejudicial and they will be
> permitted.

Id.  Later in the same hearing, the district court briefly revisited the issue, stating

to defense counsel:

> You also seek to exclude nonexistence of other similar incidents.  I
> am permitting testimony regarding similar incidents to show notice
> and I am likewise going to permit evidence of no other similar
> incidents to show lack of notice.  If you have an objection to the
> witness's – to the foundation of this at the time that it's being

2

entered, you may assert that.

Id. at 207-08.

There is now an intra-panel dispute concerning the district court's treatment of the defendants' motion. In Judge Murphy's view, the district court treated the defendants' motion as a challenge only to Sevart's ability to testify concerning the statistical evidence. Judge Crow, in contrast, believes the district court made a more general ruling, permitting statistical evidence in general to be admitted.

In my view, the reality lies somewhere between these two positions. Because plaintiff presented Sevart's testimony by videotaped deposition, and because the district court was able to view that testimony prior to ruling on the motion in limine, it seems reasonable to conclude that the district court intended to make a definitive ruling with respect to Sevart's testimony, i.e., to permit Sevart to testify about the Arndt article and about his own investigation of tractor/mower rollovers, and to tentatively allow plaintiff's other experts to testify about similar statistics and/or accidents, subject to defendants objecting to such testimony during trial. However, the issue did not arise again because defendants never raised any specific objections at trial.

The question, then, is whether the district court abused its discretion in making these rulings. In Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1246 (10th Cir. 2000), we emphasized that "[t]he precise degree of similarity required to

3

ensure the relevance of another accident depends on the theory of defect underlying the case." Thus, we noted, "a high degree of similarity" is required "when plaintiffs offer other accident evidence to prove causation in their case," but a "lesser degree of similarity" is required "when evidence of other accidents is offered to show the defendant had notice of potential defects in its product." Id. at 1246-47.

I am persuaded the district court acted within its discretion in ruling on the admissibility of Sevart's testimony. Defendants essentially denied that the mower at issue was susceptible to rollovers, and plaintiff's purpose in introducing the statistical evidence was to show defendants had notice that the mower could, in fact, roll over. The district court specifically recognized this and, despite its awareness that the statistical evidence cited by Sevart arose from accidents that were not identical to the one at issue, it concluded the evidence was relevant and more probative than prejudicial. This does not, in my view, rise to the level of being "arbitrary, capricious, whimsical, or manifestly unreasonable."[1] Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999).

In reaching this conclusion, I disagree with Judge Murphy's assumption

---

[1] I also agree with Judge Murphy that the majority opinion in Kinser v. Gehl, 184 F.3d 1249 (10th Cir. 1999), provides an alternate basis for affirming the district court's decision to admit Sevart's testimony.

4

that plaintiff failed to establish the substantial similarity of the tractor rollovers reported in the Arndt article. Although defendants have not included in their appendix a copy of plaintiff's response to their motion in limine, the district court docket sheet indicates that plaintiff in fact filed such a response on January 7, 2000. Further, we know from the record that the district court reviewed Sevart's videotaped deposition, which included Sevart's explanation of why he believed the Arndt article was relevant. Lastly, it is clear from the record that the district court concluded the Arndt statistics were relevant and admissible. Based upon these facts, as well as the district court's ruling on defendants' motion in limine, I am persuaded that plaintiff did, in fact, establish the substantial similarity of the Arndt statistics, at least to the satisfaction of district court.

That leaves only the district court's ruling tentatively allowing plaintiff's other experts to testify about similar accidents and/or statistics. On this point, I again conclude there was no abuse of discretion on the part of the district court. As noted in the majority opinion, defendants' motion in limine gave no details about the specific evidence defendants wanted to prohibit. Thus, tentatively denying defendants' motion was the most prudent approach for the district court. More specifically, the ruling allowed defendants the opportunity to object at trial, and afforded the district court the opportunity to make a more detailed and context-specific ruling at that time. However, the court was not required to

revisit the issue because defendants never raised any further objections.

No. 00-6072, Black v. M&W Gear

**CROW, J.** , District Judge, dissenting:

I respectfully dissent from the court's findings regarding the admissibility of evidence of other tractor rollover accidents. The majority recites the longstanding and undisputed rule of law that "before evidence of other accidents is admissible for any purpose, however, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court. *See Wheeler v. John Deere Co.* , 862 F.2d 1404, 1407 (10th Cir. 1988)." The majority then correctly finds that plaintiff did not establish the substantial similarity of the tractor rollovers reported in the Arndt article to the accident that caused the death of Black.

Yet instead of finding an abuse of discretion in admitting such evidence at trial, the majority relies upon *Kinser v. Gehl Co.* , 184 F.3d 1259 (10th Cir. 1999), *overruled on other grounds, Weisgram v. Marley Co.* , 528 U.S. 440, 446 n. 2, 456-57 (2000), to permit Sevart to testify about the Arndt article because he is an expert, because evidence of other accidents would be inadmissible only because of its irrelevance, and because experts are "presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." In my view, *Kinser* does not warrant so broad a reading.

In *Kinser* , documents not admitted into evidence were used by plaintiff's

expert witnesses as a partial basis upon which to assess defendant's knowledge of hazards with that product and exercise of due care (or lack thereof) in product design. Testimony established that a committee of an organization to which the defendant belonged had discussed the hazards and resulting injuries. The court found that minutes of those meetings and correspondence between committee members were proper bases upon which the expert witness could rely for opinions regarding that manufacturer's knowledge of possible hazards and/or design defects.

Defendant additionally attacked the lack of proof of authenticity of such documents, prompting the court to state:

> Rule 703, however, permits expert witnesses to base their opinions on evidence that is inadmissible under the hearsay, authentication, and best evidence rules. 29 Charles A. Wright and Victor J. Gold, Federal Practice and Procedure § 6273, at 311 (1997). "The rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." *Id.*

184 F.3d at 1275. I read this language as speaking solely to the issue posed: *i.e.*, whether the expert could base his opinion on documents that had not been properly authenticated. I do not read this language to mean that an expert may testify to the content of articles upon which the expert relied regarding other accidents, merely because the substantial similarity test is driven by reliability or relevance concerns, as does the majority. In fact, *Kinser* separately addressed the issue of evidence of previous accidents, *see* 184 F.3d at 1273-74, applied the

2

substantial similarity rule, and did not create, allude to, or condone use of the expert relevance/reliability test fashioned by the majority here.

The similarity of other accidents is generally not a matter within an expert's area of special competence, but is a matter independently determined by the court. While the foundation establishing sufficient similarity may be laid in the presence of the jury, the preferable approach is for the trial judge to hold a hearing outside its presence. *Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 830 (1982). Further, the favored method of presenting evidence of other accidents is through the testimony of those familiar with such accidents. *Johnson v. Colt Indus. Operating Corp*., 797 F.2d 1530, 1534 n. 4 (10th Cir.1986). Sevart did not purport to have been familiar with the circumstances present in any of the 30,000 to 50,000 cases included in the Arndt article about which he testified.

Applying *Kinser* to the present situation permits an expert to testify about other accidents, similar or not, vitiating the rule that before evidence of other accidents is admissible for any purpose the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court. Although under Fed.R.Evid. 703 experts are given some latitude to testify to facts otherwise not admissible in evidence, the court must nonetheless 'make a preliminary determination pursuant to Rule 104(a) whether the particular underlying data is of

3

a kind that is reasonably relied upon by experts in the particular field in reaching conclusions.' 3 J. Weinstein & M. Berger, Weinstein's Evidence p. 703, at 703-16 (1982). The district court "may not abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility." *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1223, 1245 (E.D.N.Y.1985), *aff'd*, 818 F.2d 187 (2d Cir.1987).

In my view, the admission of testimony about thousands of other accidents which were not shown to be substantially similar to plaintiff's constituted plain error, and improperly shifted the burden of proving dissimilarity to the defendants. Here, as in *Wheeler*, this error cannot be deemed harmless. 862 F.2d at 1409.

I further dissent from the finding that Sevart's personal investigation of other accidents was admissible. In the majority's view, Sevart established that the accidents he investigated were substantially similar to Black's by stating that they involved "[s]mall tractors...[u]sed primarily for mowing." Sevart's conclusion is no different than stating that all crashes of six-seat airplanes are sufficiently similar because they involve small aircraft used primarily for pleasure. No showing was made of similar horsepower, similar model or structure, similar gravity base, or similar circumstances under which the accidents occurred, as is required.

4

References to tractor rollovers were also made other than in Sevart's testimony. Defendants failed to object to such evidence, although they had filed a motion in limine on this very issue. The majority finds defendants' motion in limine insufficient to preserve defendants' objection to such testimony. In my view, defendants sufficiently preserved their objection to this evidence.

Defendants' motion in limine moved the court to exclude any testimony, evidence or reference by counsel to the following matters: "I. "Dissimilar accidents or statistics regarding other roll-over accidents. II. Expert opinion testimony by plaintiff's expert, John B. Sevart, P.E." Although defendants' brief in support of its motion was short, it addressed these two issues separately, as did their motion. In my view, defendants' pretrial motion in limine preserved the objection because the issue was fairly presented to the trial court, it is of a type which can be and usually is finally decided in a pretrial hearing, and the court unequivocally decided it against the defendants before trial in stating that defendants' motion "is denied in its entirety." *See United States v. Mejia-Alarcon*, 995 F.2d 982, 988 (10th Cir. 1993). Although in an abundance of caution counsel should perhaps have renewed their objection at trial, defendants should not be prejudiced under these circumstances for having relied upon the court's ruling on their motion in limine.

The majority further finds that a punitive damages instruction was proper

5

because a reasonable jury could have found sufficient evidence that defendants acted with reckless disregard for the rights of others. The bulk of the evidence to which the majority refers is none other than that which I believe should have been excluded, as discussed above. The remainder of the evidence consisted of a general letter written by expert Sevart to defendants, which has little, if any, probative value on this issue because of his self interest in the matter.

The evidence was uncontradicted that defendants had never received a complaint of a rollover on this product, that the product in question is different from the general class of tractors because of its low center of gravity, that OSHA standards and engineering standards did not require a rollover protection system on this product, and that the evidence of rollovers related to tractors as a huge class of machinery and not to zero-turning radius lawn tractors. I see no basis for a finding of reckless disregard. Accordingly, I also respectfully dissent from the majority's finding that the issue of punitive damages should have been submitted to the jury.