**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SAMUEL D. EDWARDS,

      Plaintiff-Appellant,

v.

PEPSICO, INC., a North Carolina
corporation; B.W. SINCLAIR, INC.,
a Texas corporation,

      Defendants-Cross-Defendants-
      Cross-Claimants-Third-
      Party-Plaintiffs-Appellees,

WM. W. MEYER & SONS, INC.,
an Illinois corporation; PEPSI-COLA
COMPANY, a North Carolina
corporation,

      Defendants-Cross-Defendants-
      Cross-Claimants-Appellees,

LOCKWOOD GREENE ENGINEERS,
INC., a foreign corporation,

      Defendant-Cross-Defendant-
      Cross-Claimant-Third-
      Party-Defendant-Appellee,

CONOPCO, INC., d/b/a Thomas J.
Lipton Company, a Virginia
corporation,

      Defendant-Cross-Defendant-
      Cross-Claimant-Third-
      Party-Plaintiff,

No. 06-7032
(D.C. No. CIV-04-096-W)
(E.D. Okla.)

WHITLOCK PACKAGING
CORPORATION, INC.,

      Third-Party-Defendant,

  and

JOHN DOE; JANE DOE,

      Defendants.

## ORDER AND JUDGMENT[*]

Before **MURPHY**, **PORFILIO**, and **EBEL**, Circuit Judges.

In this diversity action, plaintiff Samuel D. Edwards sued several business entities alleging they were responsible for defects in the design and manufacture of the machine that caused a severe injury to his hand. The jury awarded actual damages in the total amount of $1.5 million against defendants Pepsico, Inc., Pepsi-Cola Company, and B. W. Sinclair, Inc., but found in favor of defendants Wm. W. Meyer & Sons, Inc., and Lockwood Greene Engineers, Inc. On appeal, Mr. Edwards challenges the unfavorable portion of the jury verdict and the

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court's entry of judgment as a matter of law on his punitive-damages claim. We affirm the judgment of the district court.

## I. Background

Mr. Edwards had three fingers severed from his dominant hand while working on a bulk bag unloading unit (BBU) at the place of his employment, Whitlock Packaging Corporation, Inc. (Whitlock). His lawsuit asserted that, under Oklahoma state-law theories of manufacturers' product liability and gross negligence, defendants were responsible for design flaws in the BBU and a failure to warn of safety concerns.[1]

At trial, the jury learned about the BBU and the roles played by the various defendants. The BBU was designed for Pepsi-Cola Company, a division of Pepsico, Inc. (Pepsi), as part of a system for the production of ready-to-drink beverages bottled under the Lipton Tea name. Pepsi pressed for an accelerated manufacturing schedule because it had identified bottled tea as a lucrative product.

The BBU holds a 1,600-pound sack of tea leaves and allows the leaves to flow through its rotary feeder component to unload a specified weight into a large brew basket. Lockwood Greene Engineers (LGE), a design and procurement firm,

---

[1] With the consent of the parties, Mr. Edwards' case was assigned to a United States Magistrate Judge for all purposes, including final disposition. *See* 28 U.S.C. § 636(c)(1). The magistrate judge conducted the jury trial in this matter.

created the initial design and, as Pepsi's agent, hired B. W. Sinclair, Inc. to manufacture ten of the systems. Wm. W. Meyer & Sons, Inc. (Meyer) entered into a contract with Sinclair to supply the BBU feeder component. During the bidding process, Meyer deleted a discharge guard for the feeder component from the quote at the request of a Sinclair manufacturing representative. Meyer delivered the feeders, with attached warning stickers, additional warning stickers, and manuals warning against operating the feeder without a guard on the discharge end and warning the user to keep hands away from the feeder. Sinclair incorporated the feeders into the systems and delivered them to designated facilities.

One of the ten systems was installed at Whitlock, which installed a guard on the feeder approximately two years before Mr. Edwards' injury but removed it because it interfered with the flow of tea. At the time of the incident, Mr. Edwards believed there was a clog in the BBU. He attempted to remedy the problem without shutting off the power or noticing the warning signs. He knelt down and placed his dominant hand into the unguarded discharge opening of the feeder. The rotating vanes inside the feeder sliced off his fingers.

Mr. Edwards' experts testified that the unguarded moving blades of the feeder were unreasonably dangerous and that defendants had cost-effective, alternative-design options. They also stated that the existing warnings were too small, blocked by hardware, or in the wrong place. Plaintiff's theory of the case

was that "speed and greed . . . controll[ed] the project rather than engineering standards."  Aplt. Br. at 10.

Defendants put on evidence indicating that, prior to Mr. Edwards' incident, there had been no reports of similar injuries to workers on any of the ten manufactured systems.  An experienced manufacturing manager testified that he had never seen a guard on the discharge outlet of a BBU because there was no expectation that an operator would be near it.  In addition, they demonstrated that Mr. Edwards was aware of Whitlock's safety rules prohibiting employees from putting their hands into moving machines and requiring employees to shut off power before working on equipment.

The district court denied defendants' motions for judgment as a matter of law on Mr. Edwards' claims for negligence and manufacturers' product liability.  Before sending the case to the jury, however, the court dismissed the claim for punitive damages.  The court also declined to give Mr. Edwards' two proposed instructions on the law of agency.

The jury returned a verdict against the Pepsi defendants and Sinclair, but in favor of LGE and Meyer.  The jury awarded Mr. Edwards a total of $1,500,000.  In allocating fault with regard to the negligence claim, the jury found Mr. Edwards 10% negligent, Pepsi 50% negligent, Sinclair 20% negligent,

Whitlock (a non-party) 20% negligent, and LGE and Meyer 0% negligent. The district court entered judgment on the jury verdict.[2]

## II. Discussion

Mr. Edwards raises three issues on appeal. He asserts that: (1) the district court should have instructed the jury on the law of agency, (2) there was sufficient evidence to submit his punitive-damages claim to the jury, and (3) he was entitled to judgment as a matter of law against Meyer and LGE on his manufacturers' products liability claim. We will address Mr. Edwards' issues in the order in which they arose at trial.

### A. Proposed Jury Instructions on Law of Agency

We review the trial court's refusal to give Mr. Edwards' requested instructions for abuse of discretion. *See United States v. Moran,* 503 F.3d 1135, 1146 (10th Cir. 2007), *petition for cert. filed* (U.S. Dec. 21, 2007) (No. 07-8500). Assessing an exercise of discretion requires a de novo determination of "whether, as a whole, [the instructions] correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir.

---

[2]    After entering judgment on the jury verdict, the district court ruled in favor of Pepsi on its cross-claim against Sinclair for indemnity and contribution. This court has affirmed the district court's judgment requiring Sinclair to indemnify Pepsi. *Edwards v. Pepsico, Inc.*, No. 06-7036, 2007 WL 2962214, *1 (10th Cir. Oct. 11, 2007).

2006) (quotation omitted). "The question of the substance of a jury instruction in a diversity case is controlled by state law although the grant or denial of the instruction is a matter of federal procedure." *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1500 (10th Cir. 1996).

On appeal, Mr. Edwards asserts that his proposed agency instructions would have made a difference in the outcome of his case: the jury may have decided Meyer, the feeder-component supplier, was as culpable as Sinclair, the manufacturer. He claims that a properly instructed jury could have found Meyer liable for its sales agent's acquiescence in Sinclair's request to remove a guard from the final quote or, alternatively, concluded "that Meyer was acting as an agent of Sinclair." Aplt. Br. at 27-28. We reject Mr. Edwards' contentions.

The sales agent's employment relationship with Meyer was evident from the testimony. The jury instructions made it plain that an "act or omission of an . . . employee while acting within the scope of his employment is the act or omission of the particular Defendant for whom the . . . employee worked." Aplt. App., Vol. I at 191. Another instruction on this issue would be duplicative and thus unnecessary. *See United States v. McKinney,* 822 F.2d 946, 949 (10th Cir. 1987) (stating that "requested instructions that are . . . repetitious are correctly refused"). Further, no evidence supports Mr. Edwards' theory of a Meyer/Sinclair agency. A party is only entitled to an instruction on a legal doctrine if enough

evidence was presented at trial for a reasonable jury to find in favor of that party based on the doctrine. *Cf. Kieffer*, 90 F.3d at 1500-01.

The instructions provided the jury with an accurate understanding of the relevant legal standards and factual issues in the case. We see no error and, accordingly, no abuse of discretion in connection with the jury instructions. And, in any event, our review of the record reveals that Mr. Edwards' proposed instructions would have had no bearing on the outcome of the trial.

## B.    Punitive damages

The trial court granted defendants' motion for judgment as a matter of law and dismissed Mr. Edwards' punitive-damages claim. We review this ruling de novo, considering the entire record in the light most favorable to the non-moving party. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007). Although we analyze the underlying claim under state law, "[t]he appropriateness of a Rule 50 judgment as a matter of law is a federal procedural question." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 581 (10th Cir. 1998) (quotation omitted). *Cf. Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001) ("This diversity action is governed by Oklahoma's substantive tort law, but we are governed by federal law in determining the propriety of the district court's grant of summary judgment").

Under federal procedural rules, judgment as a matter of law is warranted only "'[i]f during a trial by jury a party has been fully heard on an issue and there

is no legally sufficient evidentiary basis for a reasonable jury to find for that party.'" *Herrera*, 474 F.3d at 685 (quoting the version of Fed. R. Civ. P. 50(a)(1) effective until Dec. 1, 2007). "[T]o affirm the grant of judgment as a matter of law, this court must be certain that the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict. This court must construe the evidence and inferences most favorably to the non-moving party, the Plaintiff." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1239 (10th Cir. 2001) (quotation and citation omitted). Nevertheless, "the question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party." *Herrera*, 474 F.3d at 685 (quotation omitted). The nonmoving party "must present more than a scintilla of evidence supporting [his] claim." *Id.*

Oklahoma substantive law provides, inter alia, that "[p]unitive damages are awarded '*only* when the evidence plainly shows oppression, fraud, malice, or gross negligence.'" *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 893 (10th Cir. 2006) (quoting *McLaughlin v. Nat'l Benefit Life Ins. Co.*, 772 P.2d 383, 386 (Okla. 1988) (further quotation omitted)); *see* Okla. Stat. tit. 23, § 9.1 (permitting recovery of punitive damages within statutory limits if a jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others or acted intentionally and with malice towards other). "Under § 9.1, for punitive damages to be allowed there **must** be evidence, **at a minimum**, of reckless

disregard toward another's rights from which malice and evil intent may be inferred." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005). And "'reckless disregard'" means that the defendant "'was either aware, or did not care that there was a substantial and unnecessary risk that [its] conduct would cause serious injury to others.'" *Black*, 269 F.3d at 1239 (quoting Okla. Unif. Civil Jury Instruc. 5.6, available at http://www.oscn.net/applications/oscn). "'[T]he conduct . . . must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.'" *Id.*

Mr. Edwards states that the punitive damages claim should have been presented to the jury because there was some "competent evidence" supporting the elements of his punitive damage claim. Aplt. Br. at 15, Reply Br. at 14. In contrast, the district court determined that Mr. Edwards had "failed to demonstrate . . . that any of the defendants were aware that the failure to place a guard or further warnings on the bulk bag unloader would place someone in plaintiff's circumstances in substantial risk of serious injury." Aplt. App., Vol. III at 1033. Further, the evidence did not "show that any of the named defendants did not care that their actions would result in injury." *Id.* In the district court's view, "[t]he requisite high probability that defendant[s'] actions would result in injury is simply lacking." *Id.*

Our review of the appellate record convinces us the trial court correctly withheld the issue of punitive damages from jury consideration:  the record does not contain competent evidence from which a reasonable jury could find reckless disregard sufficient to support an inference of evil intent and malice.

**C.    Judgment as a matter of law against Meyer and LGE**

Mr. Edwards argues that he was entitled to judgment as a matter of law against Meyer and LGE.  A "particularly strict" standard is applied when the party with the burden of proof moves for judgment as a matter of law.  *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).  Under these circumstances, "[t]he evidence is tested for its overwhelming effect."  *Id.* (quoting *Hurd v. Am. Hoist & Derrick Co.*, 734 F.2d 495, 499 (10th Cir. 1984)).  The movant is entitled to a favorable ruling "only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in his favor."  *Id.* (quoting *Hurd*, 734 F.2d at 499).

Mr. Edwards asserts that, as a matter of law, Meyer and LGE should be held strictly liable for their participation in the manufacture of the BBU.  An Oklahoma manufacturers' product liability claim requires a plaintiff to demonstrate three elements:  (1) the product caused plaintiff's injury; (2) a defect in the product existing at the time it left the defendants' possession and control; and (3) the defect rendered the product unreasonably dangerous.  *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974).  "The alleged defect may be the result of

a problem in the product's design or manufacture, or it may be the result of inadequate warnings regarding use of the product." *Wheeler v. HO Sports Inc.,* 232 F.3d 754, 757 (10th Cir. 2000) (quotation omitted).

Mr. Edwards' argument against Meyer and LGE begins and ends with the proposition that, under Oklahoma law, a manufacturers' product liability claim applies to manufacturers, "processors, assemblers, and all other persons who are similarly situated in processing and distribution." *Kirkland*, 521 P.2d at 1361. There is no legal support, however, for Mr. Edwards' attempt to extend this principle and make all defendants within the chain of distribution automatically liable for a defective product. Rather, "responsibility for the defect must still be traced to the proper Defendant." *Id.* at 1365. Thus, "which Defendant is responsible for an alleged defect [is] determined in the trial court." *Id.*

At trial, the jury was presented with competing versions of the facts relating to the design and manufacture of the BBU. As a result, Mr. Edwards was not entitled to judgment as a matter of law. The district court correctly entered judgment on the jury verdict in favor of Meyer and LGE.

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge

-12-