FILED
United States Court of Appeals
Tenth Circuit

May 20, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

SAMUEL D. EDWARDS,

     Plaintiff,

v.

JOHN DOE; JANE DOE,

     Defendants,

PEPSICO, INC., a North Carolina
corporation; CONOPCO, INC.,
d/b/a Thomas J. Lipton Company, a
Virginia corporation; B.W.
SINCLAIR, INC., a Texas corporation,

     Defendant Cross-Claimant

     Cross-Defendant,

LOCKWOOD GREENE ENGINEERS,
INC., a foreign corporation,

     Defendant-Cross-Claimant,

v.

WM. W. MEYER & SONS, INC., an
Illinois corporation,

     Defendant- Cross-Defendant,

and

PEPSI-COLA COMPANY, a North
Carolina corporation;

No. 07-7050
(E.D. Okla.)
(D.Ct. No. CIV-04-096-W)

Defendant Cross-Defendant,

WHITLOCK PACKAGING
CORPORATION, INC,.

Third-Party-Defendant,
----------------------------------

CAPRON & EDWARDS, P.C.,

Movant-Appellant,

v.

HOLDEN & CARR, P.C.,

Movant-Appellee.

_____

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Capron & Edwards, P.C., appeals from the district court's grant of

summary judgment in favor of Holden & Carr, P.C., enforcing its attorney's lien

and adopting its interpretation of a fee agreement. We conclude Capron &

Edwards has standing to appeal and the district court's exercise of supplemental

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

jurisdiction was proper, but reverse because the court erred in interpreting the fee agreement.

## I. BACKGROUND

On March 4, 2004, Holden & Carr (formerly Holden & McKenna) entered into a fee agreement ("Fee Agreement") with Samuel Edwards ("plaintiff"). Stephen J. Capron, then a member of Holden & Carr, negotiated and prepared the Fee Agreement and executed it on behalf of the firm. The Fee Agreement provides, in pertinent part:

> WHEREAS, Client has agreed to employ Attorney to bring said actions and prosecute the same through trial only, or otherwise satisfactory settlement to Client and Attorney before trial
>
> * * *
>
> A. Except as otherwise limited by law, Attorney's fees to be paid by Client shall be calculated in accordance with the following:
>
> 1. In the event said cause or causes are settled without suit, or in the even[t] suit is filed and successfully settled or otherwise resolved before pre-trial, a sum equal to forty-five percent (45%) of the first $200,000 of damages recovered will be Attorney's fee.
>
> 2. In the event said cause or causes are settled after pre-trial, but before any appeal, or in the event said cause or causes are successfully tried and collection of any judgment is made before any appeal is filed, a sum equal to fifty percent (50%) of all damages recovered will be Attorney's fee.
>
> 3. In the event that damages in excess of $200,000

are recovered, a sum equal to fifty percent (50%) of those damages in excess of $200,000 will be Attorney's fee in addition to the Attorney's fee described in paragraph number one.

4. In the event a judgment obtained is appealed by the defendant or defendants, or in the event that Client deems an appeal to be appropriate for any reason, Attorney is not obligated to engage in any representation of Client on appeal. Any such representation will be negotiated separately from this agreement for representation in the trial court, and any agreement reached between the parties for such representation will be subject to a separate written contract or will not be enforceable by either party.

\* \* \*

6. All necessary costs and expenses of said litigation, including the necessary personal expenses of Attorney in connection therewith, shall be advanced by Attorney, but shall be borne and paid by Client and shall be deducted from that portion of the total recovery before Attorney's fee is calculated.

\* \* \*

B. With the exception of the pursuit of an appeal, Attorney agrees that he will diligently institute and prosecute said action to a final determination in the proper trial court and make all reasonable and necessary efforts to collect any judgment that may be rendered therein in favor of Client. Further, Attorney will promptly communicate to Client any and all offers of compromise of said cause.

\* \* \*

D. If representation is terminated by Client or by Attorney for any reason, Attorney shall be entitled to

> compensation at the rate of $200.00 per hour for all work performed by Attorney for Client, and at the rate of $100.00 per hour for all work performed by any paralegal for Client. Further, Client grants Attorney a lien against any proceeds from the immediately completed litigation and any related litigation involving the same parties or basic nucleus of common facts for any amounts owed under this Agreement.

(Appellant's App. at 145-47.)

On March 10, 2004, Holden & Carr filed a complaint in federal district court on behalf of the plaintiff, seeking damages from multiple defendants for injuries sustained in a workplace accident involving a rotary feeder machine used to process tea. The caption of the complaint included the notation: "Attorney Lien Claimed." (Appellee's Supp. App. at 1.) Capron acted as the lead attorney at trial and, on February 18, 2005, the jury rendered a $1.5 million verdict in favor of the plaintiff.

On June 30, 2005, Capron resigned from Holden & Carr to establish a new firm, Capron & Edwards (no relation to the plaintiff). On July 11, the plaintiff requested his file be transferred from Holden & Carr to Capron & Edwards. At the time of this request, no money had been recovered from the defendants and post-trial proceedings were still pending. Capron (now at Capron & Edwards) represented the plaintiff in post-trial proceedings, in settlement discussions and on appeal.[1] On February 13, 2006, seven months after the plaintiff's file was

---

[1] The plaintiff appealed from the district court's entry of judgment as a matter of law on his punitive damages claim. We affirmed. *Edwards v. PepsiCo, Inc.*, 268 Fed.

transferred to Capron & Edwards, the court entered various orders on post-trial motions and, on March 24, 2006, final judgment was entered.

On June 30, 2006, Capron & Edwards informed Holden & Carr it had received partial payment on the judgment.[2]  Capron & Edwards requested Holden & Carr submit documentation of the time it spent on the plaintiff's case so it could determine the hourly fee due under ¶ D of the Fee Agreement.  Holden & Carr responded by claiming entitlement to a contingent fee under ¶ A(3) of the Fee Agreement.[3]  Ultimately, Capron & Edwards deposited the disputed funds in its trust account and paid the remainder to the plaintiff.

On July 3, 2006, Holden & Carr filed an application for hearing on enforcement of its attorney's lien.  Before the court ruled on the application, the plaintiff filed a motion to dissolve the claimed attorney's lien.[4]  On September 25, 2006, Holden & Carr moved for summary judgment seeking enforcement of its lien.  **[Appellant's App. at 126-70]**  Capron & Edwards filed a cross-motion for summary judgment.

The district court granted Holden & Carr's motion and denied Capron &

---

Appx. 756 (10th Cir. 2008).

[2] Capron & Edwards ultimately received $1,777,134.77.

[3] Holden & Carr seeks $846,125.24 in fees and $69,025.85 for costs.

[4] That motion was denied as moot following the grant of summary judgment.

Edwards's cross-motion. The court found "no significant dispute in the facts presented" and determined the issue was ripe for summary judgment. (Appellant's App. at 221.) The court determined the contract was unambiguous and entitled Holden & Carr to a fee pursuant to the contingent fee clause (¶ A(3)), not the termination of representation clause (¶ D), because Holden & Carr had fully performed its contractual obligations prior to the transfer of representation. Capron & Edwards requests the summary judgment order be vacated and funds be apportioned pursuant to ¶ D. The plaintiff is not a party to this appeal.[5]

## II. DISCUSSION

A.    Standing

Holden & Carr claims Capron & Edwards lacks standing to appeal because it is neither a party to, nor a beneficiary of, the Fee Agreement and is not affected by the district court's decision. Capron & Edwards argues it has standing because "it has competing interests in the disputed funds." (Appellant's Opening Br. at 11.) Our review is de novo. *See Stewart v. Kempthorne*, 554 F.3d 1245, 1254 (10th Cir. 2009).

"Th[e] [standing] inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In both

---

[5] The plaintiff was a party to this proceeding in the district court, but is not a party to this appeal. As explained by Capron & Edwards, "Plaintiff has already received his recovery, less the disputed funds, and has no further interest in this matter, which is essentially a disagreement between two law firms regarding the division of a fee." (Appellant's Reply Br. at 5.)

dimensions it is founded in concern about the proper—and properly limited—role

of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975)

(citation omitted). "Standing is 'an essential and unchanging part' of the Article

III case-or-controversy requirement." *Byers v. City of Albuquerque*, 150 F.3d

1271, 1274 (10th Cir. 1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992)). If a plaintiff lacks Article III standing, a court has no subject

matter jurisdiction to hear its claim. *See Stewart*, 554 F.3d at 1254. "[D]efenses

challenging this court's jurisdiction may be raised at any time." *Baca v. King*, 92

F.3d 1031, 1034 (10th Cir. 1996).

> The Supreme Court has explained:
>
> [A] party seeking to invoke a federal court's jurisdiction must
> demonstrate three things: (1) injury in fact, by which we mean an
> invasion of a legally protected interest that is (a) concrete and
> particularized, and (b) actual or imminent, not conjectural or
> hypothetical; (2) a causal relationship between the injury and the
> challenged conduct, by which we mean that the injury fairly can be
> traced to the challenged action of the defendant, and has not resulted
> from the independent action of some third party not before the court;
> and (3) a likelihood that the injury will be redressed by a favorable
> decision, by which we mean that the prospect of obtaining relief from
> the injury as a result of a favorable ruling is not too speculative.

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of*

*Jacksonville, Fla.*, 508 U.S. 656, 663-64 (1993) (quotations and citations

omitted). The question presented here is whether Capron & Edwards meets the

first of these three requirements—that is, whether it has been injured in fact by

the district court's order.

"Counsel have standing to appeal from orders issued directly against them, but not from orders applicable only to their clients." *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 854 (10th Cir. 1993) (citations omitted); *see also Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1213 (10th Cir. 2000) (same). The key factor in determining whether an attorney has standing to appeal is whether the attorney has been "aggrieved by the order from which appeal is taken." *Uselton*, 9 F.3d at 854. In *Uselton*, we dismissed the portion of class counsel's appeal which challenged a fee award to objecting counsel, concluding "[o]nly the plaintiff class . . . could be considered aggrieved by that award." *Id.* at 855. Similarly, in *Weeks*, we concluded the plaintiff's counsel did not have standing to appeal from an order relating to the plaintiff's costs and fees. 230 F.3d at 1213. However, in *Riggs v. Scrivner, Inc.*, we held the plaintiff's attorney was the proper party to challenge the district court's imposition of sanctions against him as he was the party aggrieved by the order. 927 F.2d 1146, 1149 (10th Cir. 1991).[6]

Capron & Edwards is aggrieved by the district court's order as that order limits its ability to recover for its representation of the plaintiff in post-trial and

---

[6] We ultimately held we lacked jurisdiction to review the merits because the notice of appeal failed to name the plaintiff's attorney as a party to the appeal. *Riggs*, 927 F.2d at 1149.

appellate proceedings. Oklahoma law limits the attorneys' fees a contingency fee plaintiff can be required to pay: "It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed fifty percent (50%) of the net amount of such judgment as may be recovered . . . ." Okla. Stat. Ann. tit. 5, § 7. The district court interpreted the Fee Agreement to entitle Holden & Carr to recover the majority of money the plaintiff can be required to pay.[7] An "aggrieved party" is "[a] party entitled to a remedy; esp. a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." BLACK'S LAW DICTIONARY 1144 (8th ed. 2004). Certainly, Capron & Edwards's pecuniary interest is affected by the district court's order. As required, this injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Ne. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 663 (quotations omitted). Thus, Capron & Edwards has standing to appeal.[8]

B. Supplemental Jurisdiction

---

[7] The court held Holden & Carr was entitled to 45% of the first $200,000 recovered under ¶ A(1) and 50% of the remainder under ¶ A(3). Thus, under Oklahoma law, the only amount remaining for Capron & Edwards for its representation of the plaintiff would be 5% of the first $200,000 recovered ($10,000).

[8] Capron & Edwards also contends it has standing by virtue of a common law retaining lien. Because of our conclusion, we need not consider the claimed retaining lien.

Both Holden & Carr and Capron & Edwards argued before the district court that it had supplemental jurisdiction to resolve this fee dispute.[9] The court apparently agreed, though it did not include any discussion of jurisdiction in its order. Neither party raises a jurisdictional question on appeal. Nonetheless, "we have an independent duty to examine our own jurisdiction." *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The district court had original jurisdiction over the underlying action (the personal injury litigation) under 28 U.S.C. § 1332. The question here is whether the fee dispute between Holden & Carr and Capron & Edwards forms "part of the same case or controversy" as the underlying action, such that supplemental jurisdiction was proper. *See* 28 U.S.C. § 1367(a) ("Except

---

[9] Supplemental jurisdiction encompasses what courts previously called ancillary jurisdiction and pendent jurisdiction. As the Supreme Court explained in *Exxon Mobil Corp. v. Allapattah Servs.*:

> The terms of § 1367 do not acknowledge any distinction between pendent jurisdiction and the doctrine of so-called ancillary jurisdiction. Though the doctrines of pendent and ancillary jurisdiction developed separately as a historical matter, the Court has recognized that the doctrines are two species of the same generic problem. Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary.

545 U.S. 546, 559 (2005) (quotations and citation omitted).

as [otherwise] provided . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")

> [D]isputes are part of the "same case or controversy" within § 1367 when they derive from a common nucleus of operative fact. The "common nucleus" standard hails originally from *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), a pre-§ 1367 case addressing pendent jurisdiction. When both pendent and ancillary jurisdiction were codified in 1990 as § 1367, however, the "common nucleus" test was retained by nearly all the Circuits to interpret the statute's "case or controversy" language.

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quotations and citation omitted); *see also Estate of Harshman v. Jackson Hole Mountain Resort Co.*, 379 F.3d 1161, 1165 (10th Cir. 2004) (applying the *Gibbs* standard under § 1367).

Were the dispute between a law firm and a party to the underlying litigation, the answer would be a simple one. We have held: "Determining the legal fees a party to a lawsuit . . . owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction." *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982); *see also Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir. 1989) (same); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-288 (6th Cir. 1997) ("[A]lthough attorneys' fee arrangements are

-12-

contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action."); *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir. 1987) ("Attorneys' fee arrangements in diversity cases . . . are matters primarily of state contract law. Nevertheless the federal forum has a vital interest in those arrangements because they bear directly upon the ability of the court to dispose of cases before it in a fair manner.").

The question here is not so simple as the dispute is between two law firms, not a law firm and a party. At least one federal court has exercised supplemental jurisdiction over a fee dispute between attorneys. In *Avery v. Manitowoc County*, the court exercised supplemental jurisdiction over a fee dispute between a law firm retained by a plaintiff under a contingency fee agreement and a latter-hired attorney who represented the plaintiff through settlement finding the dispute to be "part of the same case or controversy" as the underlying claim. 428 F. Supp. 2d 891, 893 (E.D. Wis. 2006). The court concluded it had jurisdiction over the fee dispute because: (1) "courts have ancillary jurisdiction over fee disputes which arise between a lawyer and a client;" (2) "the Supreme Court held that the exercise of ancillary jurisdiction is appropriate where the subsidiary controversy has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit;" and (3) at the request of the

parties, the court "expressly retained jurisdiction to resolve the fee dispute." *Id.* at 893-94 (quotations omitted).

Here, unlike in *Avery*, the court did not have actual or constructive possession of the disputed funds. Moreover, the court did not expressly retain jurisdiction to resolve the fee dispute. However, the dispute involves an attorney's lien, which weighs in favor of jurisdiction because the lien creates a direct connection to the underlying litigation. *See Albuquerque Technical Vocational Inst. v. Gen. Meters Corp.*, 17 Fed. Appx. 870, 871 (10th Cir. 2001) (unpublished) ("Jurisdiction to consider [appellee law firm]'s attorney lien was proper under 28 U.S.C. § 1367.").[10]

In *Clark v. Kick*, the district court for the Southern District of Texas concluded it could have exercised supplemental jurisdiction over an attorney/attorney fee dispute, though it was not called upon to do so.[11] 79 F. Supp. 2d 747 (S.D. Tex. 2000). The court explained:

---

[10] Unpublished cases are not precedential. 10th Cir. R. 32.1. We cite *Albuquerque Technical* only for its persuasive value.

[11] *Clark* involved a dispute between Texas and California firms over the apportionment of fees. After the California firm filed a notice of attorney's lien, the Texas firm filed a declaratory judgment action to settle the fee controversy. 79 F. Supp. 2d at 749. The California firm moved to dismiss the declaratory judgment action for lack of personal jurisdiction, failure to join an indispensible party, failure to state a claim and improper venue. Before considering the merits of the motion, the district court noted "it appears that Plaintiffs' most straightforward course of action in resolving this fee dispute would have been to invoke this Court's supplemental jurisdiction in the earlier action . . . ." *Id.*

-14-

> A court has supplemental jurisdiction to hear fee disputes and lien claims between parties and their attorneys, ***and between groups of attorneys***, without regard to the jurisdiction basis of the original action, so long as the fee dispute relates to the original action. In other words, once this Court's jurisdiction has been properly invoked to settle the controversy in the original action, and subject matter, personal jurisdiction, venue and other concerns have been laid to rest in the original action, the court has the power to settle fee disputes arising out of that original action without regard to the citizenship ***of the disputing attorneys*** and other niceties. All the Circuit Courts of Appeal which have considered this question appear to agree on this point.

*Id.* at 749-50 (citing cases from the Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth Circuits) (emphasis added).[12]

However, in an unpublished case, the Seventh Circuit declined to exercise supplemental jurisdiction over a dispute between an attorney and his former partners. *Cooper v. IBM Pers. Pension Plan*, 240 Fed. Appx. 133 (7th Cir. 2007) (unpublished). In *Cooper*, an attorney in a law firm that represented a plaintiff in ERISA litigation withdrew from the firm before the case ended and sought fees from the firm pursuant to a contract between himself and the firm following a favorable settlement. *Id.* at 135. The attorney filed a motion "to enforce what he styled an attorney's lien on the fees due." *Id.* The district court denied the motion, concluding it lacked subject matter jurisdiction. The Seventh Circuit dismissed the attorney's appeal, concluding the attorney lacked standing and the court lacked jurisdiction: "The dispute between [the attorney] and his ex-partners

---

[12] From this Circuit, the *Clark* court cited *Jenkins*, 670 F.2d at 919.

-15-

arises under a contract. It is unrelated to the dispute between Cooper and IBM, so it cannot be adjudicated under the supplemental jurisdiction." *Id.*

We are persuaded by the reasoning of *Avery* and *Clark*. The fee dispute here forms part of the same case or controversy as the plaintiff's personal injury litigation because it involves the two firms that represented the plaintiff in that action and involves an attorney's lien claimed in that action. Moreover, and unlike in *Cooper*, the plaintiff is a party to the contract at issue (the Fee Agreement) and our interpretation of that contract could impact the plaintiff, even though he has disavowed any interest in the funds. While this action could have been brought in state court, the district court did not overstep its bounds in exercising supplemental jurisdiction. Its exercise of jurisdiction was judicially economic and convenient for the litigants. *See Estate of Harshman*, 379 F.3d at 1164 (stating Congress enacted § 1367 "to vindicate values of economy, convenience, fairness, and comity").

C. Interpretation of the Fee Agreement

"This court reviews an award of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party."[13] *Hammons v. Saffle*,

---

[13] Holden & Carr contends our review is for abuse of discretion as the claim below was for enforcement of an attorney's lien. *See Albuquerque Technical*, 17 Fed. Appx. at 874 ("Under both New Mexico and Tenth Circuit law, a decision by a trial court to award attorney fees under a lien is reviewable for abuse of discretion."); *Garrick*, 888 F.2d at 690 ("We review the magistrate's award of attorneys' fees for abuse of discretion."). We disagree, as the dispute here is principally over the interpretation of a contract, not over whether Holden & Carr can enforce its attorney's lien.

348 F.3d 1250, 1254 (10th Cir. 2003). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If there is no genuine issue of material fact in dispute, this court then determines if the substantive law was correctly applied by the district court." *Hammons*, 348 F.3d at 1254. Since this case is grounded on diversity jurisdiction, the substantive law of Oklahoma governs. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The district court's determination of Oklahoma law is entitled to no deference and our review is de novo. *Id.* Under Oklahoma law, the interpretation of a contract is a question of law reviewed de novo. *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006).

The district court concluded Holden & Carr is entitled to a contingent fee because it was obligated to represent the plaintiff "through trial only" and thus, the contract was fully performed when the jury verdict was rendered. Capron & Edwards contends the contract was not fully performed prior to the transfer of representation because Holden & Carr's contractual obligations extended to all proceedings in the trial court. Moreover, Capron & Edwards claims the district court's interpretation of ¶ A(3) is contrary to its plain language, as it is only triggered "[i]n the event that damages . . . are recovered" and damages were not recovered (*i.e.*, received) until after representation was transferred to Capron &

-17-

Edwards.[14]  (Appellant's App. at 145.)

"The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made."  *May*, 151 P.3d at 140; *see also* Okla. Stat. tit. 15, § 152 ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.").

> If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated.  The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to resolve.  Contractual intent is determined from the entire agreement.  If a contract is complete in itself and viewed in its entirety is unambiguous, its language is the only legitimate evidence of what the parties intended.  The Court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision.

*S. Corr. Sys., Inc. v. Union City Pub. Schs.*, 64 P.3d 1083, 1088-89 (Okla. 2002) (footnotes omitted).  "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous."  *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003).

Examining the Fee Agreement as a whole, we conclude it is not ambiguous and was intended to cover all representation in the trial court.  The district court

---

[14] Capron & Edwards also contends the court erred in failing to perform an equitable division of fees.  Capron & Edwards did not make this argument before the district court and thus, we will not consider it on appeal.  *See Laurino v. Tate*, 220 F.3d 1213, 1218 n.4 (10th Cir. 2000) ("[Appellant] failed to show that he made this argument in the district court, and we therefore decline to consider it.").

focused on one of the recital clauses,[15] which provides: "Client has agreed to employ Attorney to bring said actions and prosecute the same through trial only . . . ." (Appellant's App. at 145.)  As used here, "trial" does not extend to post-trial proceedings.  By their very name, post-trial proceedings are post, or after, trial.  However, two of the operative clauses suggest the parties did not intend for the representation to conclude upon the return of a verdict.

Paragraph A(4) states: "Any such representation [on appeal] will be negotiated separately from this agreement for representation in the trial court . . . ."  (*Id.*)  Similarly, ¶ B provides:

> With the exception of the pursuit of an appeal, Attorney agrees that he will diligently institute and prosecute said action to a final determination in the proper trial court and make all reasonable and necessary efforts to collect any judgment that may be rendered therein in favor of the Client.

(*Id.* at 146.)  These paragraphs reveal the parties intended for Holden & Carr to represent the plaintiff through a "final determination" in "the trial court," not simply the return of a verdict.   To the extent the recital clause can be read otherwise, it cannot control over the operative clauses.[16]  *See Thomas v. Dancer*,

---

[15] A recital clause (sometimes referred to as a "whereas" clause) is "[a] preliminary statement in a contract . . . explaining the background of the transaction or showing the existence of particular facts."  BLACK'S LAW DICTIONARY 1276 (7th ed. 1999).  By contrast, an operative clause is a clause "that gives effect to the transaction involved."  *Id.* at 1119.

[16] Holden & Carr argues we cannot consider the argument that a recital clause cannot control over an operative clause because Capron & Edwards did not raise it with the district court.  (Appellee's Br. at 26.)  Capron & Edwards contends it did make this argument, though it did not use the term "recital clause."  (Appellant's Reply Br. at 6-7.)

264 P.2d 714, 718 (Okla. 1953) ("As a general rule, recitals in a contract will not control the operative clauses thereof . . . .") (quotations omitted); *see also Ferrell Constr. Co. v. Russell Creek Coal Co.*, 645 P.2d 1005, 1009 (Okla. 1982) ("Recital clauses in a contract generally do not constitute a covenant or a contractual commitment.").

The district court also erroneously interpreted ¶ A(3) because recovery is a condition precedent to the application of that paragraph and recovery did not occur prior to the transfer of representation.[17]  (*See* Appellant's App. at 145 ("In the event that damages . . . ***are recovered*** . . . .") (emphasis added).)  Under Oklahoma law, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."  Okla. Stat. tit. 15, § 159.  The district court's construction of ¶ A(3) does not make the Fee Agreement definite or capable of being carried into effect because a contingent

---

While "[w]e will not consider an appellant's new legal theory on appeal, even if it falls under the same general category as an argument presented at trial," *Jantzen v. Hawkins*, 188 F.3d 1247, 1257 (10th Cir. 1999) (quotations omitted), we can consider this argument, as Capron & Edwards argued the contract should be interpreted as a whole and claimed the language in the operative clauses (though not termed such) should control. *See Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 469 (2000) ("It is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts.  But this principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue.").

[17] We reject Holden & Carr's contention that the "contingent event that entitled Holden & Carr to its fee" was "representation through trial."  (Appellee's Br. at 11.)

fee cannot be calculated prior to the recovery of money damages.

The district court emphasized the fact "Plaintiff's interpretation would permit a client to terminate the legal representation in a deliberate effort to avoid the more lucrative [for the firm] negotiated compensation formula. This after the firm had taken on the time, expense, burden and risk of litigation . . . ." (Appellant's App. at 226.) It is not our job to rewrite a contract to make a better deal for the parties:

> The general rule is: "Where a contract has been voluntarily, understandingly, and fairly entered into, and is free from fraud, accident, mistake, or any other circumstance recognized as a ground for equitable relief, a court of equity must, when its jurisdiction is properly invoked, give full force and effect to such contract; it cannot ignore, disturb, or alter the rights created by it, or grant relief against their enforcement." 30 C.J.S., Equity, § 62, p. 411. The fact that for one of the parties the contract is unwise or improvident, or that its enforcement is harsh when it was so intended to be, does not alter the rule.

*Cox v. Freeman*, 227 P.2d 670, 678 (Okla. 1951). Moreover, as a general rule, "the language of [a] contract should be interpreted most strongly against the party who drafted the contract." *Dismuke v. Cseh*, 830 P.2d 188, 190 (Okla. 1992). It was Holden & Carr, not the plaintiff, who drafted the Fee Agreement.[18] Holden & Carr determined the hourly fee set forth in ¶ D, which we presume is sufficient to compensate it for its work, including some margin of profit. We are not convinced that public policy considerations present a sufficient reason to stray

---

[18] Though Capron drafted the contract, he did so on behalf of Holden & Carr, the contracting party. Thus, we treat Holden & Carr as the drafter.

-21-

from the unambiguous language of the Fee Agreement.

We **REVERSE** the grant of summary judgment in favor of Holden & Carr and remand for proceedings consistent with this Order and Judgment.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge